UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SENBIN HOU,<br><br>Petitioner(s),<br><br>v.<br><br>ICE FIELD OFFICE DIRECTOR,[1]<br><br>Respondent(s). | CASE NO. C26-1828-KKE<br><br>ORDER ON HABEAS PETITION |

Petitioner was arrested in May 2026 and has been in immigration detention since then. Dkt. No. 3 at 17–19, Dkt. No. 8 ¶ 19. He filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Dkt. No. 3. He argues that his detention is unlawful because the Government[2] violated his constitutional right to procedural due process. *Id.* at 1. The Court agrees and will therefore grant the petition and order Petitioner's immediate release.

## I. BACKGROUND

Petitioner is a citizen of China who entered the United States in December 2023 without being admitted or paroled. Dkt. No. 8 ¶¶ 4–5. He alleges that he fled China earlier that year, after

[1] Petitioner does not name the proper respondent—the warden of the Northwest ICE Processing Center ("NWIPC")—in his petition. *See Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). Under Federal Rule of Civil Procedure 21, the Court may, "on its own," and "on just terms, add … a party." Construing the petition liberally, as it must, the Court finds that Petitioner is seeking release from the NWIPC and thus directs the Clerk under Rule 21 to add Bruce Scott, Warden of the NWIPC, as a respondent in this action. *See, e.g.*, *Urena v. Warden, Otay Mesa Det. Ctr.*, 26-CV-323-JO-DDL, 2026 WL 362082 (S.D. Cal. Feb. 9, 2026) (adding warden *sua sponte* "[g]iven Petitioner's *pro se* status and his clear indication that he seeks release from the Otay Mesa Detention Center").

[2] This order refers to Respondent ICE Field Office Director as "the Government."

Chinese authorities attempted to arrest him over his participation in protests against the Chinese government's quarantine measures during the COVID-19 pandemic. Dkt. No. 3 at 9. Immediately upon arriving in the United States, Petitioner was detained and transported to a detention facility in McAllen, Texas. Dkt. No. 8 ¶ 6. Immigration and Customs Enforcement ("ICE") processed Petitioner for expedited removal. *Id.* ¶ 8. And in December 2023, Petitioner claimed a fear of being returned to China. *Id.* ¶ 9.

U.S. Citizenship and Immigration Services initially found that Petitioner lacked a credible fear of returning to China. Dkt. No. 8 ¶¶ 10–11. But Petitioner requested review by an immigration judge ("IJ"), and the IJ vacated that finding, determining Petitioner's fear was credible. *Id.* ¶¶ 12–14, Dkt. No. 3 at 9. Petitioner was released on parole in February 2024, and, a month later, issued a notice to appear for removal proceedings. Dkt. No. 8 ¶¶ 15–16, Dkt. No. 7-3. At some point, Petitioner was issued an order of release on recognizance ("OREC") (Dkt. No. 7-1 at 3), but ICE's records apparently do not contain the document (Dkt. No. 7-4). In March 2024, Petitioner was enrolled in a program called "Alternatives to Detention" ("ATD"). Dkt. No. 8 ¶ 17. Initially, Petitioner alleges he wore a GPS bracelet—an arrangement he claims "went well[.]" Dkt. No. 3 at 14. But at some point, ICE required him to begin using a mobile application to periodically complete biometric check-ins. *Id.* at 10–11. According to Petitioner, the app required him, upon receiving a notification, to check-in using facial recognition within a specific time window. *Id.*

The Government contends that, according to records from ICE's "contractor who runs the ATD program[,]" Petitioner missed biometric check-ins on fifteen occasions over more than a year and a half. Dkt. No. 8 ¶ 18. Petitioner, however, claims that each of these missed check-ins resulted from "technical problems" he experienced with the app's facial recognition function. Dkt. No. 3 at 10–11. According to Petitioner, after each instance of attempting to use the app but being unable to complete the facial recognition during the required time window, Petitioner called ICE

to inform them of the issue. *Id.* at 10, Dkt. No. 12 at 2. And Petitioner contends that, until his arrest, ICE never notified him, including in subsequent in-person appointments, that he had "failed the facial recognition check-[ins][.]" Dkt. No. 12 at 3.

ICE also contends that Petitioner missed two in-person office visits. Dkt. No. 8 ¶ 18. Petitioner disputes this. Dkt. No. 12 at 2. He claims that, on at least one of the occasions, he was in the process of being transferred from ICE's Spokane office to its Seattle office, may have visited the wrong office, and was told by ICE to return another day. Dkt. No. 3 at 10–11.

In May 2026, ICE revoked Petitioner's OREC and arrested him after Petitioner reported for an in-person check-in at ICE's Tukwila office. Dkt. No. 7-1 at 3. ICE records reflect that it did so after conducting a "routine case review" and discovering Petitioner's missed appointments and biometric check-ins. *Id.* The Government acknowledges that "[t]here is no dispute that Petitioner did not receive a pre-deprivation hearing prior to the revocation of his OREC." Dkt. No. 6 at 7. Indeed, the record does not reflect that Petitioner was given any opportunity to contest the reasons for his re-detention or to explain why the records from ICE's contractor reflected missed check-ins.

In June 2026, Petitioner, proceeding *pro se*, filed a petition for a writ of habeas corpus, contending, among other things, that his re-detention violated due process and requesting his release. Dkt. No. 3. For the following reasons, the Court grants the habeas petition.

## II. DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property,

without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Government acknowledges that the *Mathews* test applies here (Dkt. No. 6 at 7–9), and the Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

**A. Petitioner Was Detained Under 8 U.S.C. § 1226(a).**

As a preliminary matter, to determine whether Petitioner's detention complies with due process, the Court must determine the statutory authority governing his detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review

process available to him if he wishes to contest the necessity of his detention.").

The Government argues that Petitioner falls within the mandatory detention scheme under Section 1225(b)(2) as an applicant for admission to the United States. Dkt. No. 6 at 3–6. The Court reiterates its agreement with other courts that reject an expansion of the scope of mandatory detention under Section 1225(b)(2) to include Petitioner. Petitioner's status as a person previously released with conditions, and who has been living in this country for years, counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g., Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States

for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases). Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a).

**B. Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Government acknowledges Petitioner's "liberty interest in his continued freedom from detention while on parole" but suggests that this interest is diminished because it "was always conditional both on the progression of his removal proceedings, compliance with certain conditions, and adherence to state, local, and federal laws." Dkt. No. 6 at 8.

The fact that the Government believes it had a valid basis for revoking Petitioner's OREC, however, does not "obviate the need for the Government to provide [an] individualized hearing" to allow Petitioner to challenge the reasons for his re-detention "prior to re-detaining" him. *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)). That detention of a noncitizen can be constitutionally valid does not imply that it is always constitutionally valid, and the Court disagrees with the Government to the extent that it argues that Petitioner's liberty interest is not sufficiently robust as to be constitutionally protected. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is

conditional, have a liberty interest in their continued liberty."). The Government's references to the "progression of [Petitioner's] removal proceedings" and his "adherence" to the law (Dkt. No. 6 at 8) are particularly inapt as Petitioner has no criminal record and his re-detention was never predicated on developments in his removal proceedings. Dkt. No. 3 at 19.

Accordingly, the first *Mathews* factor favors Petitioner.

**C. The Risk of Erroneous Deprivation of Liberty is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court agrees with Petitioner that the risk of erroneous deprivation in the absence of a pre-detention hearing is high.

The Government argues that the risk of erroneous deprivation is low because ICE's records (obtained from its contractor) provide "a clear demonstration of Petitioner's noncompliance with the requirements of his release." Dkt. No. 6 at 8. But Petitioner disputes that he failed to comply with his OREC; and the point of a pre-deprivation process is to determine whether he may be correct. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). Indeed, the risk of erroneous deprivation is particularly pronounced here, where Petitioner denies ever receiving notice that he missed any biometric check-in, and the Government has produced no document demonstrating otherwise. *See Aslan v. Wamsley*, No. 2:25-CV-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (finding risk of erroneous deprivation high where the Government "produced no document—no letter, no electronic notification, no signed acknowledgment—demonstrating that [petitioner] was ever informed of the appointment he allegedly missed"). Indeed, the Government has not even produced the OREC itself as to identify the provisions Petitioner purportedly violated. Dkt. No. 7-4 (memorandum cancelling OREC and stating "[t]his

memo has been created because the [OREC] is not immediately available to complete").

Accordingly, the Court finds that the second *Mathews* factor favors Petitioner. *See Doe*, 787 F. Supp. 3d at 1094.

**D. The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low. Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and re-detaining him, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

The Government argues generically that it has a heightened interest in "the immigration detention context" and "in protecting immigration proceedings from unnecessary delay[.]" Dkt. No. 6 at 9 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)). But it does not explain how providing Petitioner a pre-deprivation hearing might have delayed his immigration proceedings. Indeed, his removal hearing is not scheduled until February 2027. Dkt. No. 7-3 at 2. And the Government's suggestion that it had to "act promptly" to revoke Petitioner's release because of his missed check-ins (Dkt. No. 6 at 8) is belied by the fact that Petitioner's purported OREC violations occurred over a period of more than a year and a half, during which time ICE took no action. Dkt. No. 8 ¶ 18. Moreover, Petitioner attended the in-person appointment at which ICE arrested him just two weeks after he allegedly missed a biometrics check-in, further undermining any urgency in effectuating his arrest.

In sum, the Court finds that the Government's interest in re-detaining a non-citizen previously released without a hearing is minimal: any administrative or financial burdens in providing a pre-deprivation hearing to Petitioner are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. Accordingly, the third and final *Mathews* factor favors Petitioner.

As the Court's review of the *Mathews* factors suggests, Petitioner's detention does not comport with due process. Indeed, as the Government acknowledges, "[c]ourts in this district have granted habeas petitions in similar circumstances." Dkt. No. 6 at 9; *see, e.g., Saley v. Scott*, No. 2:26-CV-00797-JNW, 2026 WL 914810, at *3–5 (W.D. Wash. Apr. 3, 2026) (holding that revocation of release based on missed biometric check-ins violated due process where Petitioner received no notice of the purported violations or a pre-deprivation hearing before arrest); *Grajeda Velazquez v. Wamsley*, No. 2:25-CV-02641-JHC, 2026 WL 84223, at *3–5 (W.D. Wash. Jan. 12, 2026) (same where re-detention was premised on "missed biometric check-ins" but the Government provided no evidence rebutting "claims that there were technical failures with the app or that [petitioner] tried to communicate these issues with" ICE).

## III. REMEDY

Having determined that Petitioner's detention violates his constitutional right to due process, the Court finds Petitioner's detention to be unlawful and will grant the habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

Furthermore, as explained in this order, due process requires that Petitioner receives notice and an opportunity to be heard before he may be re-detained for alleged OREC violations. *See, e.g.*, *Llanes Tellez v. Bondi*, 826 F.Supp.3d 1141, 1154 (N.D. Cal. 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future hearing for this purpose, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

## IV. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 3.

(1) The Clerk is DIRECTED to add Bruce Scott, Warden of the Northwest ICE Processing Center, as a respondent in this action.

(2) The Court ORDERS that Petitioner shall be released from custody no later than July 30, 2026, on the terms of his prior OREC. The Government shall file a status report no later than July 31, 2026, to confirm Petitioner's release in compliance with this order.

Dated this 29th day of July, 2026.

Kymberly K. Evanson
United States District Judge